16-2173-cv
SPV OSUS Ltd. v. UBS AG, et al

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2016

(Argued: June 14, 2017                                    Decided: February 9, 2018)

Docket No. 16-2173

_____

SPV OSUS LTD.,

     *Plaintiff-Appellant*,

               v.

UBS AG, UBS (LUXEMBOURG) S.A., UBS FUND SERVICES (LUXEMBOURG)
S.A., UBS THIRD PARTY MANAGEMENT COMPANY S.A., AIA LLC, ACCESS
PARTNERS (SUISSE) S.A., ACCESS MANAGEMENT LUXEMBOURG S.A.,
ACCESS PARTNERS S.A. (LUXEMBOURG), PATRICK LITTAYE, ACCESS
INTERNATIONAL ADVISORS LTD., THEODORE DUMBAULD,

     *Defendants-Appellees*.[1]

_____

Before: CALABRESI and POOLER, *Circuit Judges*, and RAMOS, *District Judge*.[2]

---

[1] The Clerk of the Court is directed to amend the caption as above.

[2] Judge Edgardo Ramos, United States District Court for the Southern District of
New York, sitting by designation.

SPV Osus Ltd. is the putative assignee of Optimal Strategic U.S. Equity Ltd (collectively, "SPV"). Optimal invested money directly with Bernard L. Madoff Investment Securities LLC ("BLMIS"). When BLMIS turned out to be a massive Ponzi scheme, *see In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-33 (2d Cir. 2011), Optimal suffered losses it alleges totaled roughly $2.9 billion. SPV sued UBS AG and its affiliated entities (collectively, "UBS") and AIA LLC and its affiliated entities and individuals (collectively, "Access") in New York state court. In broad strokes, SPV alleges that UBS and Access aided and abetted BLMIS and Madoff by sponsoring, and providing support for, two European-based feeder funds. SPV alleges that the feeder funds channeled billions of dollars to Madoff and BLMIS, allowing them to further their fraud. SPV alleges UBS and Access chose to work with the feeder funds despite being aware of fraudulent activity on the part of Madoff and BLMIS. Absent assistance from UBS and Access, SPV allege, Madoff and BLMIS could not have continued to operate their Ponzi scheme.

UBS removed the New York state action to the United States District Court for the Southern District of New York (Rakoff, *J.*) SPV moved to remand. The district court denied the motion, finding federal jurisdiction proper pursuant to

2

28 U.S.C. § 1334, which provides federal courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b*). See SPV OSUS Ltd. v. UBS AG*, 2015 WL 4079079 (S.D.N.Y. July 1, 2015). The district court then granted UBS's motion to dismiss the complaint for lack of personal jurisdiction. *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015). Finally, the district court granted a separate motion by the Access Defendants to dismiss the complaint against them, in relevant part, on the ground that SPV's complaint failed to adequately allege that actions by the Access Defendants proximately caused SPV's loss. *See SPV OSUS Ltd. v. UBS AG*, 2016 WL 3039192 (S.D.N.Y. May 26, 2016).

On appeal, SPV primarily argues that (1) this litigation is not "related to" the Madoff/BLMIS bankruptcies, such that the federal courts lack jurisdiction; (2) the district court erred in finding it lacked personal jurisdiction over UBS; and (3) it adequately pled proximate cause. For the reasons detailed below, we affirm the district court in all respects.

Affirmed.

Judge Calabresi concurs in the judgment and opinion of the Court, except for Part II, and files a concurring opinion.

3

_____

CHRISTIAN WARD, Yetter Coleman LLP (Collin J. Cox, *on the brief*), Houston, TX, *for Plaintiff-Appellant SPV Osus Ltd.*

MARSHALL L. KING, Gibson, Dunn & Crutcher LLP (Gabriel Herrman, *on the brief*), New York, NY, *for Defendants-Appellees UBS AG, UBS (Luxembourg) S.A., UBS Fund Services (Luxembourg) S.A., and UBS Third Party Management Company S.A.*

ANTHONY L. PACCIOINE, Katten Muchen Roseman LLP (Brian L. Muldrew, *on the brief*), New York, NY, *for Defendants-Appellees AIA LLC, Access Partners (Suisse) S.A., Access Management Luxembourg S.A., Access Partners S.A. (Luxembourg), Patrick Littaye, Access International Advisors Ltd.*

POOLER, *Circuit Judge*:

This case presents yet another chapter in the Bernie Madoff saga. SPV Osus Ltd. is the putative assignee of Optimal Strategic U.S. Equity Ltd (collectively, "SPV"). Optimal invested money directly with Bernard L. Madoff Investment Securities LLC ("BLMIS"). When BLMIS turned out to be a massive Ponzi scheme, *see In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 231-33 (2d Cir. 2011), Optimal suffered losses it alleges totaled roughly $2.9 billion.

Seeking a fresh path to recovery, SPV sued UBS AG and its affiliated entities (collectively, "UBS") and AIA LLC and its affiliated entities and individuals (collectively, "Access") in New York state court. The gravamen of SPV's complaint is that UBS and Access aided and abetted BLMIS and Madoff by sponsoring, and providing support for, two European-based feeder funds— Luxalpha SICAV and Groupement Financier Ltd. SPV alleges that the feeder funds in turn channeled billions of dollars to Madoff and BLMIS, allowing them to further their fraud. SPV alleges UBS and Access were involved with the feeder funds despite being aware of numerous signs of fraudulent activity on the part of Madoff and BLMIS. Absent such assistance from UBS and Access, SPV alleges, Madoff and BLMIS could not have continued to operate their Ponzi scheme.

UBS removed the state court action to the United States District Court for the Southern District of New York. SPV moved to remand. The district court denied the motion, finding federal jurisdiction proper pursuant to 28 U.S.C. § 1334, which provides federal courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). *See SPV OSUS Ltd. v. UBS AG*, 2015 WL 4079079 (S.D.N.Y. July 1, 2015) ("*SPV I*"). The district court then granted

5

UBS's motion to dismiss the complaint for lack of personal jurisdiction. *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161 (S.D.N.Y. 2015) ("*SPV II*"). Finally, the district court granted a separate motion by the Access Defendants to dismiss the complaint against them, in relevant part, on the ground that SPV's complaint failed to adequately allege that actions by the Access Defendants proximately caused SPV's loss. *See SPV OSUS Ltd. v. UBS AG*, 2016 WL 3039192 (S.D.N.Y. May 26, 2016) ("*SPV III*").

On appeal, SPV primarily argues that the district court erred in (1) not granting SPV's motion to remand, as the instant litigation is not "related to" the Madoff/BLMIS bankruptcies and the federal courts lack jurisdiction; (2) finding it lacked personal jurisdiction over UBS; and (3) finding it failed to adequately plead proximate cause. For the reasons detailed below, we affirm the district court's decisions in all respects.


## BACKGROUND

SPV is a Bahamian corporation that alleges is it the assignee of Optimal. Optimal invested directly with BLMIS, and its last statement from BLMIS in November 2008 reported roughly $2.9 billion in its accounts. Madoff was

involuntarily forced into Chapter 7 in April 2009. In June 2009 the Madoff estate was consolidated with a separate bankruptcy proceeding against BLMIS that was filed under the Securities Investor Protection Act ("SIPA"). The order consolidating the bankruptcy proceedings states that the consolidated estate "shall be administered in accordance with SIPA and the Bankruptcy Code under the jurisdiction of" the bankruptcy court, but "the Chapter 7 Trustee shall remain Chapter 7 trustee of the Madoff estate and shall continue to have all powers, rights, claims and interests of a Chapter 7 trustee[,] . . . [and] all powers, rights, claims and interests of the Madoff estate are expressly preserved . . .".

In December 2014, SPV filed suit in New York state court against UBS and AIA. SPV's suit set forth claims for aiding and abetting fraud, breach of fiduciary duty, conversion, and knowing participation in a breach of trust. In essence, SPV alleges that the defendants facilitated BLMIS's fraud by moving billions of dollars from European investors to BLMIS by providing support to the Luxalpha and Groupement feeder funds. SPV alleges that by supporting the feeder funds, UBS and Access provided Madoff and BLMIS with a veneer of credibility that gave investors confidence in their decision to invest with Madoff and BLMIS, allowing the fraud to continue. SPV also alleges that UBS ignored certain "red

7

flags" indicating Madoff and BLMIS were engaged in fraud, and continued to service the feeder funds so that it might pocket fees. All the while, SPV alleges, UBS protected itself and its clients by not marketing or recommending Madoff funds.

UBS AG is a Swiss entity with its principal place of business in Switzerland. The remaining UBS entities were, at all times relevant, Luxembourg entities with their principal places of business in Luxembourg. Luxalpha was organized and located in Luxembourg; Groupement was organized and located in the British Virgin Islands. SPV alleges that it pleaded sufficient contacts to allow the exercise of personal jurisdiction by virtue of the UBS entities' contacts with New York related to their interactions with the Luxalpha and Groupement feeder funds. SPV also sued AIA LLC; Access International Advisors Ltd.; Access Partners (Suisse) S.A.; Access Management Luxembourg S.A.; Access Partners S.A. (Luxembourg); and Patrick Littaye (together, the "Access Defendants").

As described above, the district court denied SPV's motion to remand the matter to state court, then granted separate motions to dismiss the complaint. This appeal followed.

**DISCUSSION**

## I. Appellate Jurisdiction.

SPV's notice of appeal designates its appeal as both from the judgment and from orders entered on July 21, 2015, July 24, 2015, May 26, 2016 and May 27, 2016. This list does not include the order and opinion denying the motion to remand. UBS argues that the failure to specify the remand order in the notice of appeal strips this Court of jurisdiction to consider an appeal from that order. We need not linger long over the issue, because even assuming arguendo that SVG waived its right to appeal, the denial of a motion to remand goes to this Court's subject matter jurisdiction, which may be raised at any time. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liability Litig.*, 488 F.3d 112, 123 (2d Cir. 2007). "Indeed, we have often taken it upon ourselves to determine whether removal jurisdiction existed even where that issue was not itself appealed." *Id.* at 121. Satisfied that the appeal from the district court's denial of the motion to remand is properly before us, we turn to the merits.

## II. "Related to" jurisdiction

"On appeal from the denial of a motion to remand for lack of subject matter jurisdiction, we review the court's legal conclusions de novo and its

9

factual findings for clear error." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006). UBS removed to federal court pursuant to the general removal statute, 28 U.S.C. § 1452(a) and the bankruptcy removal statute, which grants federal courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995).

In this Circuit, "a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate." *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (internal quotation marks omitted). "If that question is answered affirmatively, the litigation falls within the 'related to' jurisdiction of the bankruptcy court." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992). "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex*, 514 U.S. at 308. While "related to" jurisdiction is not "limitless," *id.*, it is fairly capacious, and includes "suits between third parties which have an

10

effect on the bankruptcy estate." *Id.* at 307 n. 5. "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* at 308 n. 6.

Here, the claims at issue arise in an action that does not directly involve the bankruptcy estates. "In determining whether potential claims by third party defendants against the debtor for either indemnification or contribution give rise to "related to" jurisdiction over litigation to which the debtor is not a party, courts in this circuit . . . have generally found jurisdiction where there is a 'reasonable' legal basis for the claim." *In re Worldcom, Inc. Sec. Litig.*, 293 B.R. 308, 319 (S.D.N.Y. 2003) (collecting cases). A claim need not be certain to provide a federal court with jurisdiction: "contingent outcomes can satisfy the 'conceivable effects' test, so long as there is the *possibility* of an effect on the estate." *N.Y. Commercial Bank v. Pullo*, No. 12-02052 (BRL), 2013 WL 494050, at *3 (Bankr. S.D.N.Y. Feb. 7, 2013).

The gravamen of SPV's complaint is that defendants are joint tortfeasors with Madoff and BLMIS, which, if proven, would provide defendants with a putative contribution claim, to be asserted in the bankruptcy proceedings. SPV

11

urges us to find that the district court erred in denying its motion to remand to state court because it erroneously found that UBS's potential contribution claims sufficiently "related to" the Madoff/BLMIS bankruptcy proceedings to support federal jurisdiction. SPV contends that UBS's potential claims are too remote from the bankruptcy proceedings to have any effect on the estates, making the exercise of federal jurisdiction improper.  SPV argues that UBS's potential claim for contribution in the bankruptcy proceedings is illusory, primarily because (1) the bar date to assert claims against the Madoff and BLMIS estates expired, barring UBS from pursuing any claim in the bankruptcy proceeding; and (2) in any event, there is not enough money in either estate to pay out any such claims.

We agree with the district court that the failure to file claims prior to the bar date is not fatal to the potential claims at issue here. Bankruptcy courts are permitted to accept late proofs of claim. *See, e.g., In re PT–1 Commc'ns, Inc.*, 292 B.R. 482, 489 (Bankr. E.D.N.Y. 2003) (allowing filing of late claim where claimant did not know claim existed until after the bar date lapsed). Unlike indemnification claims, contribution claims do not accrue until after liability is established. A party may not know of a potential contribution claim until sued, which may be years after bankruptcy proceedings have commenced. For

12

example, here SPV sued UBS nearly five-and-half years after the SIPA bar date. This lack of notice forms, at a minimum, a credible basis for defendants to petition the bankruptcy court for leave to file a late proof of claim based on excusable neglect. *See* Fed. R. Bankr. P. 9006(b)(1) (bankruptcy court may allow late proof of claim "where the failure to act was the result of excusable neglect.").

Conversely, "[a]n indemnification right arises at the time the indemnification agreement is executed, and it constitutes a claim under the Bankruptcy Code even if the act giving rise to indemnification has not yet occurred." *Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 2011 WL 4965150, at *5 (S.D.N.Y. Oct. 19, 2011) (internal quotation marks omitted). Excusable neglect does not excuse the failure to file proof of claim for an indemnification liability by the bar date, such that the claim could not have any "conceivable effect" on the estate. *Id., see also Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397, 2012 WL 4794450, at *3 (S.D.N.Y. Oct. 9, 2012) (same).

Moreover, it is unclear whether the applicable bar date has passed. While a bar date was set and has passed in the SIPA action involving the BLMIS estate, no bar date was set in the Madoff estate. The consolidation order states only that the combined estate "shall be administered in accordance with SIPA and the

13

Bankruptcy Code." If the SIPA bar date controls, as SPV argues, it cannot be waived. *See In re Lehman Bros., Inc.*, 493 B.R. 437, 443 (Bankr. S.D.N.Y. 2013) (noting that unlike proceedings under bankruptcy chapters 7 and 11, a court lacks discretion to extend the bar date in SIPA cases, with several exceptions inapplicable here).

We need not resolve the issue of which bar date controls. Even if the bar date set in the SIPA estate controls, simply settling the issue of whether a late claim is allowable would likely have an effect on the estate. Any attempt to file a late claim would result in the estate incurring costs. As the district court noted, even unsuccessful claims require evaluation by the trustee, who recovers fees for such work from the estate. *See* 11 U.S.C. § 704(a)(5) (trustee charged with "examin[ing] proofs of claims and object[ing] to the allowance of any claim that is improper"); 15 U.S.C. § 78fff(e) ("[a]ll costs and expenses of administration of the estate of the debtor . . . shall be borne by the general estate of the debtor."). Second, if SPV were successful in its claims against UBS, it would reduce the amount it is owed as a creditor of the BLMIS/Madoff estate. *See, e.g., n re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,* No. 03 MDL 1529, 2005 WL 1404798, at *2 (S.D.N.Y. June 14, 2005) ("To the extent that plaintiffs are successful against the

defendants, plaintiffs' recoveries will in all probability (and certainly

conceivably) reduce the total of Adelphia's liabilities"); *see also WorldCom*, 293

B.R. at 323 ("The potential alteration of the liabilities of the estate and change in

the amount available for distribution to other creditors is sufficient to find that

litigation among non-debtors is 'related to' the bankruptcy proceeding.").

The need for litigation to settle the issue of whether a late claim would be

permitted also militates against finding this litigation "related to" the bankruptcy

proceeding. SPV relies on *Pacor, Inc. v. Higgins* for the proposition that unless the

underlying litigation "automatic[ally] creat[es] liability" for the bankruptcy

estate, the connection between the underlying litigation and the bankruptcy

proceedings is too remote to support "related to" jurisdiction. 743 F.2d 984, 995

(3d Cir. 1984). Like the other circuits to reject this branch of the *Pacor* analysis, we

think a more flexible approach appropriate. *See In re El Paso Refinery, LP*, 302

F.3d 343, 348-49 (5th Cir. 2002) (holding a "chain of indemnification provisions"

that could be used to assert a claim against the debtor allowed for "related to"

jurisdiction); *In re Dow Corning Corp.*, 86 F.3d 482, 489-94 (6th Cir. 1996) (holding

that suits against manufacturers and suppliers of silicone gel breast implants

were "related to" the bankruptcy of the Dow Corning Corporation because of

15

potential claims for contribution and indemnification against Dow*); In re Wolverine Radio Co.*, 930 F.2d 1132, 1143 (6th Cir. 1991) ("related to" jurisdiction found based on contractual indemnification provision even though the debtor "would not be affected until and unless [the third party] invoked the indemnification" clause); *A.H. Robins v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) (litigation "related to" bankruptcy proceedings when brought against officers of debtor who may be entitled to indemnification under debtor's insurance policy); *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 440 (5th Cir. 2001) (noting that "related to" jurisdiction possible based on contribution claims). As discussed above, a contingent contribution claim may serve as the basis for "related to" jurisdiction as it may have a "conceivable effect" on the bankruptcy estate.

SPV also challenges the district court's conclusion that it is "within the realm of possibility" for defendants to receive a distribution from the estate. *SPV I*, 2015 WL 4079079, at *4. SPV notes that the amount of loss claim greatly exceeds the assets recovered by the estates. Thus, it argues, there will be no funds available to pay UBS, assuming SPV prevails in the underlying litigation and UBS asserts a contribution claim against the bankruptcy estate. The district court found recovery possible because "the estate continues to recover substantial

16

assets, including almost $1 billion in 2014 alone," and that "the Trustee is aggressively pursuing numerous other recoveries." *Id*. While a payout by the estate to defendants may be improbable, it is not impossible. In addition, any claim by defendants potentially alters that distribution of assets among the estates' creditors, further supporting a finding that this litigation is "related to" the bankruptcy proceedings.

Finally, there is a high degree of interconnectedness between this action and the Madoff bankruptcies: SPV can only proceed on these claims if it establishes that the Madoff fraud occurred. SPV's assignor invested directly with BLMIS. But for the automatic stay, it is difficult to imagine a scenario wherein SPV would not also sue Madoff and BLMIS, given that SPV alleges that UBS aided and abetted in their fraud. "The existence of strong interconnections between the third party action and the bankruptcy has been cited frequently by courts in concluding that the third party litigation is related to the bankruptcy proceeding." *See WorldCom*, 293 B.R. at 321 ("but for WorldCom's bankruptcy, [defendants] would have been named as a defendant in [this] action, and despite its absence as a party, its conduct will remain at the heart of [this] litigation.").

## II.     Personal jurisdiction

"We review a district court's dismissal of an action for want of personal jurisdiction de novo, construing all pleadings and affidavits in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Id*. at 34–35 (internal quotation marks omitted). A plaintiff  "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks and brackets omitted).

When a case is removed to federal court pursuant to 28 U.S.C. § 1452, personal jurisdiction is allowed to the extent permitted by the Constitution of the United States. Fed. R. Bankr. P. 7004(f).  "To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (internal quotation marks

18

omitted). "For purposes of this initial inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." *Met. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). "Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id*. (internal quotation marks omitted).

"Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Id.* (internal quotation marks omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). "The inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and

systematic," but "whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 752 (2014) (internal quotation marks and brackets omitted).

Our Court, in interpreting *Daimler*, noted that the case "expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014). In *Gucci*, we held that a court could not properly exercise general jurisdiction over the Bank of China, which had branch offices in New York but was "incorporated and headquartered elsewhere" and conducted only a small portion of its worldwide business within the forum. *Id*. at 135.

Here, UBS SA, UBS FSL and UBS TPM lack any presence in New York at all: each is incorporated, and has its principal place of business in, Luxembourg. None have any employees in the United States. UBS AG's place of incorporation and principal place of business is in Switzerland. As the district court correctly adduced, *Daimler* bars the court's exercise general jurisdiction over the USB defendants. "[A]side from the truly exceptional case, a corporation is at home

20

and subject to general jurisdiction only in its place of incorporation or principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 29 (2d Cir. 2016). SPV points to nothing that would render this an exceptional case. In *Brown*, we found defendant Lockheed Martin's contacts with Connecticut insufficient to maintain general jurisdiction even though Lockheed continuously maintained a physical presence in Connecticut for over 30 years, ran operations out of as many as four leased locations in the State, employed up to 70 workers there, and derived about $160 million in revenue from its Connecticut-based work during the relevant timeframe. *Brown*, 814 F.3d at 627-29.  But Lockheed was neither headquartered nor incorporated in Connecticut, and facts fatal to the attempt to subject Lockheed to general jurisdiction in Connecticut. *Id*. at 628–31.  Similarly, here the USB defendants simply lack sufficient contacts with the United States to allow the exercise of general jurisdiction.

Turning to the exercise of specific jurisdiction, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or

21

connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919. A court must look to "whether there was some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 924 (internal quotation marks and brackets omitted).  "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121; *see also Goodyear*, 137 S. Ct. at 919 (exercise of specific jurisdiction requires an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State").  "[A] defendant's general connections with the forum are not enough" to support the exercise of specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S.Ct. 1773, 1781 (2017).

The Supreme Court has yet to address exactly how a defendant's activities must be tied to the forum for a court to properly exercise specific personal jurisdiction.  Some circuits require that the in-forum conduct to be the proximate cause of plaintiff's injuries, while others find the standard satisfied if the defendant's activities are the "but for" cause of those injuries. *See Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998) (collecting and comparing cases).

22

In this Circuit, the standard applied depends on "the relationship among the defendant, the forum, and the litigation:"

> Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts. Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.

*Id.*

Here, the connections between the USB Defendants, SPV's claims, and its chosen New York forum are too tenuous to support the exercise of specific jurisdiction. None of the USB Defendants are resident in New York. SPV's complaint alleges the injuries suffered by OSUS were caused by Madoff and BLMIS. Missing from the complaint is any allegation that OSUS relied on UBS's contacts with the feeder funds when OSUS decided to invest directly with BLMIS. Nor are there any allegations that OSUS based its decision to invest with BLMIS on the fact that the UBS defendants helped create and service the feeder funds. Indeed, OSUS began investing in BLMIS in 1997, and the feeder funds were not created until 2003 (Groupement) and 2004 (Luxalpha). At bottom, the

23

contacts alleged by SPV between the UBS Defendants, the forum and the litigation amount to a handful of communications and transfers of funds. These limited contacts are insufficient to allow the exercise of specific personal jurisdiction over the UBS Defendants. *See, e.g.*, *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136 (S.D.N.Y. 2017) ("communications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York do not 'project' a defendant into the state sufficiently to confer" specific jurisdiction over foreign defendants) (citation omitted)).

### III.    Proximate cause

As to the Access Defendants, SPV alleges that they aided and abetted Madoff and BLMIS by luring investors into the feeder funds, which in turn invested funds in BLMIS, and those funds allowed BLMIS to continue to perpetuate its fraud. SPV asserted state law claims for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, aiding and abetting conversion, and knowing participation in a breach of trust (which is essentially an aiding and abetting claim). As set forth in *Lerner v. Fleet Bank, N.A.*, a claim for aiding and abetting a breach of fiduciary duty under New York law:

24

(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach. With respect to the second requirement, although a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty. And a person knowingly participates in a breach of fiduciary duty only when he or she provides substantial assistance to the primary violator.

459 F.3d 273, 294 (2d Cir. 2006) (internal citation and brackets omitted). Under

New York law, "the elements of aiding and abetting a breach of fiduciary duty,

aiding and abetting a conversion, and aiding and abetting a fraud are

substantially similar." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y.

2009); *see also Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir.

2011) ("[W]here the parties agree that New York law controls, this is sufficient to

establish choice of law.").

The district court dismissed SPV's state law claims against the Access

Defendants after finding that SPV failed to adequately plead the "substantial

assistance" element of its claims. *SPV III*, 2016 WL 3039192 at *6-8. "Substantial

assistance occurs when a defendant affirmatively assists, helps conceal or fails to

act when required to do so, thereby enabling the breach to occur." *Lerner*, 459

25

F.3d at 295 (citation omitted). "Substantial assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001). That is, the injury must "be a direct or reasonably foreseeable result of the conduct." *Id.* The district court correctly determined that SPV's state law claims against the Access Defendants are deficient as a matter of law because SPV failed to adequately plead proximate cause. At most, SPV pleads but-for causation. If the Access Defendants did not provide support and assistance to the feeder funds, the feeder funds would not have collected money from investors. If the money stopped flowing into BLMIS, such that the fraudulent scheme would have collapsed much sooner, staunching OSUS's losses. The link between the Access Defendants' actions (or inactions) and the harm suffered by OSUS is simply too attenuated to constitute proximate cause. As the district court pointed out, "if any entity that injected massive sums into BLMIS could be said to have aided and abetted Madoff's Ponzi scheme, OSUS, which plaintiff claims invested $1.6 billion in BLMIS, would presumably be subject to liability on the same theory." *SPV III*, 2016 WL 3039192, at *6; *see also Cromer Fin. Ltd.*, 137 F. Supp. 2d at 472 (granting motion to dismiss aiding and

26

abetting claims on substantial assistance grounds because "[w]hile the Ponzi scheme may only have been possible because of Bear Stearns' actions, or inaction, Bear Stearns' conduct was not a proximate cause of the Ponzi scheme").

SPV offers two different theories of proximate cause that it proposes to incorporate into an amended complaint. Neither theory can salvage SPV's claims. The first alternate theory is that the Access Defendants, through misleading marketing materials, aided and abetted the BLMIS fraud by providing BLMIS an "air of legitimacy." Appellant's Br. at 64. SPV points to nothing showing OSUS relied on the marketing materials provided by the Access Defendants, was aware of the Access Defendants or even knew of the feeder funds at issue. As noted above, OSUS invested with BLMIS directly, and its investments began before the feeder funds were created.  SPV's second alternate theory is that the Access Defendants are liable because they failed to notify "the world at large and international investors in particular" of BLMIS's fraud. Appellant's Br. at 59. This theory of causation is unavailing because the Access Defendants owed neither OSUS nor SPV any fiduciary duty. *See Lerner*, 459 F.3d at 295 ("The mere inaction of an alleged aider and abettor constitutes substantial

27

assistance only if the defendant owes a fiduciary duty directly to the plaintiff.")
(citation omitted)).

## CONCLUSION

For the reasons given above, the judgment of the district court is AFFIRMED.

Calabresi, *Circuit Judge*, concurring:

I join in the opinion except for its analysis of personal jurisdiction. It is not that I necessarily disagree with that analysis. But I believe the better course, in circumstances like those before us, is to assume personal jurisdiction arguendo and direct a dismissal with prejudice for failure to state a claim. Our prior case law allows us to do so.

Before *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), we, and other circuits, regularly assumed jurisdiction when "the merits question [wa]s more readily resolved . . . ." *Id.* at 93-94. But, in *Steel Co.*, the Supreme Court held that this practice, dubbed the "doctrine of hypothetical jurisdiction," "offend[ed] fundamental principles of separation of powers" and, thus, was impermissible. *Id.* at 94, 101.

*Steel Co.* does not, however, undermine the appropriateness of our deciding the merits in the current case. *Steel Co.* was concerned with the judiciary's powers under Article III. *See id.* at 95-98. Personal jurisdiction, on the other hand, is concerned with individual rights under the Due Process Clause. *Burger King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985).

1

The relevant differences between personal and subject-matter jurisdiction are legion. Parties cannot stipulate to subject-matter jurisdiction, *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900), but can to personal jurisdiction, *see Burger King*, 471 U.S. at 472 n. 14. Courts have an independent duty to assess subject-matter jurisdiction, *Great Southern*, 177 U.S. at 453, but not personal jurisdiction, *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). And while subject-matter jurisdiction is an absolute limit on the court's power to adjudicate a claim, *Mansfield, C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884), personal jurisdiction is not, *cf. In re DES Litigation*, 7 F.3d 20, 23-24 (2d Cir. 1993) (explaining that an interlocutory order finding personal jurisdiction cannot be appealed by a prevailing party because a finding of personal jurisdiction is not a "necessary step" for a district court's dismissal of a complaint and entry of judgment). I believe that *Steel Co.* is not controlling in cases of personal jurisdiction. *But see Rationis Enter. Inc. of Panama v. AEP/Borden Indus.*, 261 F.3d 264, 267-68 (2d Cir. 2001) (suggesting there is no difference between personal and subject-matter jurisdiction in this regard).

Even if there is no difference in how personal jurisdiction and subject-matter jurisdiction are to be treated, the prior cases would allow us to assume jurisdiction

2

in the circumstances before us. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n. 17 (2d Cir. 2012) (reaching the merits and declining to "address the personal jurisdictional claims made by some defendants" where the court had personal jurisdiction over other defendants). In *Norton v. Mathews*, 427 U.S. 524, 528-31 (1976), the Supreme Court avoided a jurisdictional question, and instead dismissed on the merits. The Court did so because it had already decided the merits question in a companion case. We applied *Norton* in *Center for Reproductive Law and Policy v. Bush*, 304 F.3d 183 (2d Cir. 2002) ("*Center*"). In *Center*, we directed a dismissal on the merits without reaching an open standing question because the appellants pressed a merits argument that had been squarely rejected in an earlier case. *Id.* at 193. We read *Norton* to allow courts to assume jurisdiction "in those peculiar circumstances where the outcome on the merits has been foreordained" and the court is not "us[ing] the pretermission of the jurisdictional question as a device for reaching a question of law that otherwise would have gone unaddressed." *Center*, 304 F.3d at 194 (internal quotation marks omitted).

The *Norton* rule applies here as well. "[T]he outcome on the merits" against the UBS defendants "has been foreordained." We already reached the merits in resolving the claims against the Access defendants, who are, except for the

3

personal jurisdiction issue, identically placed to the UBS defendants. Thus, if we assume jurisdiction we would not be doing so "as a device for reaching a question of law that otherwise would have gone unaddressed," but instead as a means of preventing waste of judicial resources.

We note that the *Norton* rule survived *Steel Co. Steel Co.* specifically distinguished *Norton. Steel Co.*, 523 U.S. at 98. And this Court in *Center* affirmed that *Norton* was still good law after *Steel Co*. *Center*, 304 F.3d at 194.

For these reasons, I conclude that we can and should assume personal jurisdiction and reach the merits in this case. Moreover, I believe an additional practical consideration favors our doing so here. A dismissal for lack of personal jurisdiction, which must be without prejudice, invites Appellant to seek another jurisdiction in which to bring claims we have already deemed meritless. This result would be doubly wasteful of judicial resources.

Accordingly, while I fully join the rest of the court's opinion, I do not join the discussion of personal jurisdiction as to the UBS defendants. Instead, I would hold in favor of Appellees on the merits, and dismiss the entire suit with prejudice.