*Zamora v. JP Morgan Chase Bank, N.A.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of November, two thousand twenty.

Present:
>    DEBRA ANN LIVINGSTON,
>         *Chief Judge,*
>    BARRINGTON D. PARKER,
>    GERARD E. LYNCH,
>         *Circuit Judges.*

_____

DANIEL ZAMORA, CGC, INC.,

>         *Plaintiffs-Appellants*,

>    v.                                                    19-2108

FIT INTERNATIONAL GROUP CORP., FOREX INTERNATIONAL TEAM INC., JAIRO ENRIQUE SANCHEZ, DILIA MARGARITA BAEZ, JP MORGAN CHASE BANK, N.A., JPMORGAN CHASE & CO.,

>         *Defendants-Appellees*.

_____

For Plaintiffs-Appellants:          DAVID J. STANDER, Law Office of David J. Stander, Rockville, MD

                                    David A. Bellon, Flushing, NY (*on the brief*)

For Defendants-Appellees JP
Morgan Chase Bank, N.A. and
JPMorgan Chase & Co.

JAMIE S. DYCUS (Noah A. Levine and Alexandra Hiatt,
*on the brief*), Wilmer Cutler Pickering Hale and Dorr
LLP, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Pauley, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Daniel Zamora and CGC, Inc. ("Plaintiffs") appeal from a judgment of the United States District Court for the Southern District of New York (Pauley, *J.*) granting Defendants-Appellees' motion to dismiss as to Defendants-Appellees JP Morgan Chase Bank, N.A. and JPMorgan Chase & Co. (together, "JPMorgan"). On appeal, Plaintiffs challenge the dismissal of their claims against JPMorgan—specifically, their federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and RICO conspiracy claims (Counts 4 and 5 of the Amended Complaint, respectively) and their state-law claims for fraudulent misrepresentation, knowing participation in a breach of trust, aiding and abetting a breach of fiduciary duty, conversion, aiding and abetting conversion, unjust enrichment, breach of fiduciary duty, commercial bad faith, gross negligence, and aiding and abetting fraud (Counts 6, 7, 9, 10, 11, 12, 13, 14, 15, and 17 of the Amended Complaint, respectively). Plaintiffs' claims arise out of a fraud, money laundering, and embezzlement scheme allegedly perpetrated by Dilia Margarita Baez and Jairo Enrique Sanchez, two Colombian nationals, as well as FIT International Corp. and Forex International Team Inc. (together, the "FIT Entities"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

We review *de novo* the district court's judgment granting JPMorgan's motion to dismiss. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 99–100 (2d Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "We may affirm on any ground that finds support in the record, regardless of the grounds upon which the district court relied." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 796 (2d Cir. 2014).

## A. RICO and RICO Conspiracy

The district court dismissed Plaintiffs' RICO and RICO conspiracy claims because it found that Plaintiffs failed to allege plausibly that JPMorgan was part of an association-in-fact "enterprise" with Baez, Sanchez, and the FIT Entities. We agree. To state a claim for relief under RICO, a plaintiff must plead: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). "RICO broadly defines 'enterprise' in § 1961(4) to 'includ[e] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 257 (1994) (alteration in original). An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Boyle*, 556 U.S. 938, 945 (2009) (internal quotation marks omitted) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Such an enterprise "must have at least three

structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. As to the purpose requirement, a plaintiff must demonstrate that the members of the association "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (internal quotation marks omitted) (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004)).

Here, Plaintiffs' allegations fall far short of permitting a plausible inference that JPMorgan shared in the alleged association-in-fact enterprise's common purpose. Although the Amended Complaint alleges that JPMorgan shared in the alleged RICO enterprise's common purpose to defraud investors and convert funds and property for personal gain, that allegation is little more than a "'naked assertion' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 557). Indeed, the Amended Complaint lacks any "specific factual allegation[s] about the intent" of JPMorgan to defraud investors. *Cruz*, 720 F.3d at 121. At best, the allegations in the Amended Complaint plausibly suggest that JPMorgan entered into "a routine contractual combination for the provision of financial services" with the remaining defendants, which is insufficient on its own to permit a reasonable inference that JPMorgan shared in their purported illicit purpose. *Singh v. NYCTL 2009-A Trust*, No. 14-CV-2558, 2016 WL 3962009, at *10 (S.D.N.Y. July 20, 2016) (internal quotation marks omitted) (quoting *Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999)). That JPMorgan generated unspecified fees and profits from the FIT Entities' account activities plausibly alleges only a benefit incidental to the ordinary and lawful banking relationship. To that end, the allegations fail to suggest why JPMorgan would share in the goal of defrauding investors.

4

Plaintiffs argue they plausibly allege that JPMorgan shared in the RICO enterprise's common purpose because they plausibly allege that the JPMorgan employee who opened the accounts for the FIT Entities was complicit in the fraudulent scheme. However, Plaintiffs' allegations that the JPMorgan employee engaged in criminal activity along with Baez and Sanchez are merely speculative. The facts alleged in the Amended Complaint permit only the reasonable inference that the JPMorgan employee engaged in the ordinary business activities of opening bank accounts for the FIT Entities and cultivating a business relationship with the FIT Entities, Baez, and Sanchez. Indeed, at oral argument in the district court, Plaintiffs admitted they were not aware of anything that the JPMorgan employee affirmatively did aside from opening bank accounts for the FIT Entities.

Accordingly, Plaintiffs have failed sufficiently to plead the existence of an association-in-fact enterprise and have failed to state a claim for relief under § 1962(c) of the RICO statute. And in the circumstances here, Plaintiffs' failure to state a claim for a substantive RICO violation is fatal to their RICO conspiracy claim under § 1962(d), given that Plaintiffs rely on the same factual predicate to plead both the substantive RICO violation and the conspiracy claim against JPMorgan. *See First Capital*, 385 F.3d at 164 ("[B]ecause Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims.").

## B. Fraudulent Misrepresentation

The district court dismissed Plaintiffs' claim for fraudulent misrepresentation because it found that Plaintiffs' allegations fall short of the heightened pleading standards of Fed. R. Civ. P. 9(b). "To state a claim for fraudulent misrepresentation under New York law[,] 'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to

5

defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186–87 (2d Cir. 2004) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)). To comply with Rule 9(b) as to a claim of fraudulent misrepresentation, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

We agree with the district court that Plaintiffs have failed to satisfy the requirements of Rule 9(b) as to JPMorgan. As the district court noted, most of Plaintiffs' allegations concerning false statements are aimed at Baez and Sanchez, not JPMorgan. With respect to JPMorgan, Plaintiffs allege only that: "JPMorgan employees knowingly made material false statements and representations[,] including . . . [s]upplying Plaintiffs with false and fraudulent bank account statements," App'x at 122 (Compl. ¶ 75); "JPMorgan falsely represented to victims that the funds from the 66 Account had already been deposited into that account and those funds could not be distributed to anyone other than to trade in the Forex market," App'x at 107–08 (Compl. ¶ 44); and "[o]n information and belief, JPMorgan officials repeatedly provided bank records, including account balances, verifications, and other documents confirming that the funds in the Plaintiffs' escrow accounts were secure in those accounts," App'x 108 (Compl. ¶ 44). These allegations provide little specificity regarding what the fraudulent statements were or where, when, and by whom they were made. In that respect, they fall far short of the heightened pleading requirements of Rule 9(b).

**C. Knowing Participation in a Breach of Trust, Aiding and Abetting a Breach of Fiduciary Duty, Aiding and Abetting Conversion, Commercial Bad Faith, and Aiding and Abetting Fraud**

The district court dismissed Plaintiffs' claims for knowing participation in a breach of trust, aiding and abetting a breach of fiduciary duty, aiding and abetting conversion, commercial bad faith, and aiding and abetting fraud for Plaintiffs' failure to plausibly allege JPMorgan's actual knowledge of the underlying fraudulent conduct allegedly committed by Baez, Sanchez, and the FIT Entities.[1]   Under New York law, claims for knowing participation in a breach of trust, aiding and abetting a breach of fiduciary duty, aiding and abetting conversion, commercial bad faith, and aiding and abetting fraud all require a plaintiff to demonstrate that the defendant had "actual knowledge" of the misconduct at issue.   *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012) (aiding and abetting conversion); *Lerner*, 459 F.3d at 292–95 (commercial bad faith, aiding and abetting fraud, and aiding and abetting a breach of fiduciary duty); *see also SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) (knowing participation in a breach of trust).   Mere "constructive knowledge" of the purported misconduct does not satisfy the "actual knowledge" inquiry as to any of these claims.   *See, e.g.*, *Krys v. Pigott*, 749 F.3d 117, 127–28 (2d Cir. 2014) (aiding and abetting fraud and aiding and abetting a breach of fiduciary duty); *In re Agape Litig.*, 773 F. Supp. 2d 298, 309–13, 325–26 (E.D.N.Y. 2011) (aiding and abetting conversion); *see also SPV Osus Ltd*, 882 F.3d at 345 (knowing participation in a breach of trust).   Moreover, where, as here, allegations in a complaint sound in fraud, a plaintiff must "plead facts giving rise to [a] 'strong inference' of actual knowledge of fraud[,] [as] required by Federal Rule of Civil Procedure

---

[1]  The district court also held that Plaintiffs failed to state aiding and abetting claims because they did not plausibly allege JPMorgan's substantial assistance in the underlying fraud.   Given our agreement with the district court's analysis as to actual knowledge, however, we need not address this alternative holding.

9(b)." *E.g.*, *Lerner*, 459 F.3d at 292–95 (applying Rule 9(b) to commercial bad faith, aiding and abetting a breach of fiduciary duty, and aiding and abetting fraud claims and requiring a "strong inference" of actual knowledge).

We are not persuaded that Plaintiffs' allegations permit a plausible inference, let alone a strong inference, that JPMorgan had actual knowledge of the fraudulent conduct committed by Baez, Sanchez, and the FIT Entities. Throughout the Amended Complaint, Plaintiffs offer consistently conclusory allegations that JPMorgan knew or should have known about the alleged fraudulent conduct. Such conclusory allegations are flatly insufficient. *See Iqbal*, 556 U.S. at 681. So, too, are Plaintiffs' allegations concerning the purported knowledge of the JPMorgan employee who opened the accounts for the FIT Entities, as we discussed above.

At their core, Plaintiffs' allegations rely on the theory that JPMorgan must have known of the alleged misconduct. Demonstrative of JPMorgan's knowledge, according to Plaintiffs, are their bald allegations that JPMorgan ignored a host of red flags concerning the alleged fraud of which they were or should have been aware, including that the FIT Entities commingled investor funds, that Baez and Sanchez refused to cooperate with government investigations, and that the FIT Entities were never registered as futures commodities merchants with the National Futures Association ("NFA"). But these red flags, as alleged, are insufficient to impute knowledge of the scheme to JPMorgan because, even assuming *arguendo* that they may have put JPMorgan on notice that "some impropriety may have been taking place," they do not create a strong inference of actual knowledge of the FIT Entities' "outright theft of client funds." *Lerner*, 459 F.3d at 294.[2] Plaintiffs' speculation that JPMorgan must have known about the scheme because it had

---

[2] Although we have held that a bank's knowledge of commingling client funds may be sufficient to permit a strong inference of knowledge of a breach of fiduciary duty, *Lerner*, 459 F.3d at 294, Plaintiffs here offer no more than the conclusory allegation that "JPMorgan permitted all funds from putative

8

in place unspecified anti-money-laundering controls is similarly insufficient to support a strong inference of actual knowledge here.

To the extent Plaintiffs argue that they satisfy their pleading burden on a theory of conscious avoidance, they are also mistaken. Even assuming they may bring their claims on such a theory, *see Krys*, 749 F.3d at 131 (noting that it is unclear whether under New York law a plaintiff may satisfy the "actual knowledge" inquiry by showing conscious avoidance), Plaintiffs do not allege any facts remotely suggesting that JPMorgan refrained from investigating facts concerning the FIT accounts specifically to avoid knowledge of the fraud, *see id.* at 131–32 (noting that to proceed on a conscious avoidance theory, a plaintiff must show that a defendant "'was aware of a high probability of the [relevant] fact . . . and consciously avoided confirming that fact'") (quoting *United States v. Ebbers*, 458 F.3d 110, 124 (2d Cir. 2006)). Accordingly, the district court did not err in concluding that Plaintiffs failed to state claims for knowing participation in a breach of trust, aiding and abetting a breach of fiduciary duty, aiding and abetting conversion, commercial bad faith, and aiding and abetting fraud.

### D. Conversion

The district court dismissed Plaintiffs' conversion claim because it found that Plaintiffs failed to plead JPMorgan's dominion over the property or interference with it, in derogation of their rights. It furthermore held that Plaintiffs failed to meet their pleading burden under Rule 9(b). Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2006) (alteration in original)

---

investors to be commingled into a single account," App'x at 94 (Compl. ¶ 8), without any description as to how JPMorgan was aware of such commingling.

9

(internal quotation marks omitted) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)). The "[t]wo key elements of conversion are (1) [the] plaintiff's possessory right or interest in the property . . . and (2) [the] defendant's dominion over the property or interference with it, in derogation of [the] plaintiff's rights." *Colavito v. N.Y. Orgon Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006) (citations omitted). Where a claim for conversion "rests on an allegation of fraudulent taking," it is furthermore "subject to the pleading requirements of Rule 9(b)." *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998).

We agree with the district court that Plaintiffs' allegations fall well short of plausibly alleging JPMorgan's dominion over the property or interference with it, in derogation of their rights. Plaintiffs do little more than plead the elements of the cause of action with respect to their conversion claim, which does not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). Indeed, Plaintiffs' factual allegations are sufficient only to plead that Plaintiffs' funds were being held by Baez, Sanchez, and the FIT Entities in JPMorgan accounts and were ultimately misappropriated by Baez, Sanchez, and the FIT Entities. Plaintiffs have therefore failed to state a claim for conversion against JPMorgan.

### D. Breach of Fiduciary Duty and Gross Negligence

The district court held that Plaintiffs failed to allege plausibly that JPMorgan owed them a duty for purposes of their breach of fiduciary duty and gross negligence claims.[3] Under New

---

[3] It also dismissed Plaintiffs' unjust enrichment claim because it found that Plaintiffs' relationship with JPMorgan was too attenuated to permit such a claim. We need not address this claim here, however, because Plaintiffs have waived appellate review of this claim by providing no specific arguments in support of it in their appellate brief. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) (noting that "[i]ssues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal").

York law, claims for breach of fiduciary duty require a plaintiff to plead: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011)). Similarly, claims for gross negligence require a plaintiff to plead that the defendant owed a duty of care to the plaintiff. *See NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1023 (2d Cir. 2014). Banks generally do not owe non-customers a duty to protect them from fraud perpetrated by customers. *See Lerner*, 459 F.3d at 286–87. Indeed, "a depositary bank has no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from fiduciary misappropriation." *Id.* at 287 (internal quotation marks omitted) (quoting *Norwest Mortg., Inc. v. Dime Sav. Bank of N.Y.*, 721 N.Y.S.2d 94, 95 (2d Dep't 2001)).

Notably, we have recognized a narrow exception to the rule that banks owe no duty to protect third parties from the fraudulent conduct of bank customers when a bank fails to act to safeguard trust funds on deposit in a fiduciary account after being "confronted with clear evidence indicating that those funds are being mishandled." *Id.* at 295. Under this exception, a "bank has the right to presume that the fiduciary will apply the funds to their proper purposes under the trust," and the bank loses the right to this presumption when faced with "circumstances which reasonably support the sole inference that a misappropriation is intended." *Id.* at 287 (internal quotation marks omitted) (quoting *Bischoff ex rel. Schneider v. Yorkville Bank*, 218 N.Y. 106, 111, 113 (1916)).

This exception is inapplicable to the facts as pleaded in the Amended Complaint. Plaintiffs' bald allegations that JPMorgan knew or should have known that Baez, Sanchez, and the FIT Entities commingled investor funds, refused to cooperate with government investigations, and

11

failed to register with the NFA are insufficient, without more, to support a reasonable inference that JPMorgan had "clear evidence" of the misconduct at issue. And although Plaintiffs allege that the FIT Entities engaged in voluminous international account transfers, they have failed to explain how these isolated transfers of money necessarily constitute "clear evidence" of misappropriation. We therefore agree with the district court that Plaintiffs have failed to state claims for breach of fiduciary duty and gross negligence against JPMorgan.

\* \* \*

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court. Plaintiffs' pending motion to supplement the record is **DENIED** as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk