18-3087-cv
*Chen v. Dunkin' Brands, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

August Term 2019

(Argued: October 24, 2019      Decided: March 31, 2020)

Docket No. 18-3087-cv

---

CHUFEN CHEN, on behalf of herself and others similarly situated,
ELI EVANSON, SHERRY L. JOHNSON, DAVID A. BUCHOLTZ,
MICHELLE BEATTIE,

*Plaintiffs-Appellants,*

*v.*

DUNKIN' BRANDS, INC. (A DELAWARE CORPORATION), DBA DUNKIN' DONUTS,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

Before:      PARKER, CHIN, AND BIANCO, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the

Eastern District of New York (Amon, *J.*), dismissing plaintiffs-appellants' second

amended complaint asserting violations of various state and federal consumer

protection laws pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6).

The district court dismissed the claims of four of the five plaintiffs-appellants on

the grounds that defendant-appellee was not subject to general personal

jurisdiction in New York and their allegations stemmed from conduct that

occurred outside the state. The district court dismissed the second amended

complaint as to the remaining plaintiff-appellant on the grounds that, although

personal jurisdiction existed as to her claims, she failed to state a claim because

the advertising in question was not actionable as a warranty and was not

deceptive or misleading to a reasonable consumer.

AFFIRMED.

---

C. DOUGLASS THOMAS (John Troy, *on the brief*), Troy Law, PLLC, Flushing, New York, *for Plaintiffs-Appellants.*

WILLIAM C. PERDUE (Anthony Franze, Avishai D. Don, *on the brief*), Arnold & Porter Kaye Scholer LLP, Washington, DC, *for Defendant-Appellee*.

---

2

CHIN, *Circuit Judge*:

Plaintiff-appellant Chufen Chen, on behalf of herself and all others similarly situated, and plaintiffs-appellants Eli Evanson, Sherry L. Johnson, David A. Bucholtz, and Michelle Beattie (collectively, "plaintiffs") commenced this action alleging that defendant-appellee Dunkin' Brands Inc. ("Dunkin Donuts") deceptively marketed two of its trademarked products -- the Angus Steak & Egg Breakfast Sandwich (the "Angus Sandwich") and the Angus Steak & Egg Wake-Up Wrap (the "Angus Wrap" and, together, the "Products") -- to consumers. Specifically, plaintiffs alleged that through representations made in labeling and television advertisements, Dunkin Donuts deceived consumers into believing that the Products contained an "intact" piece of meat when the Products actually contained a ground beef patty with multiple additives. J. App'x at 108. The second amended complaint (the "SAC") asserted violations of the Magnuson-Moss Act and various state consumer protection laws, including New York General Business Law (the "GBL") §§ 349 and 350, in connection with the alleged deception.

The district court dismissed the SAC for lack of personal jurisdiction and failure to state a claim. The district court held that Dunkin Donuts was not

3

subject to general personal jurisdiction in New York and dismissed the claims of Evanson, Johnson, Bucholtz, and Beattie (the "out-of-state plaintiffs") for lack of personal jurisdiction because they purchased the allegedly deceptive Products at franchises outside of New York. Although it determined specific personal jurisdiction existed as to Chen's claims, the district court dismissed her claims on the merits pursuant to Federal Rule of Civil Procedure 12(b)(6). The lower court held that the label "Angus steak" was not an actionable warranty under the Magnuson-Moss Act and that Dunkin Donuts' advertisements did not violate the GBL because they were neither deceptive nor misleading to a reasonable consumer.

On appeal, plaintiffs argue that the district court erred in dismissing the out-of-state plaintiffs' claims because Dunkin Donuts consented to general jurisdiction in New York by registering as a foreign corporation under § 1301 of the New York Business Corporation Law (the "BCL"). In the alternative, plaintiffs contend that general personal jurisdiction existed because Dunkin Donuts' contacts with New York are sufficiently "continuous and systematic." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945). Plaintiffs also assert that the district court erred in dismissing

Chen's claims because the SAC alleged plausible violations of GBL §§ 349 and 350.[1]

As discussed more fully below, we hold that under New York law, the act of registering to do business under § 1301 of the BCL does not constitute consent to general personal jurisdiction in New York. In so holding, we join the highest New York courts to have considered the issue since the Supreme Court decided *Daimler AG v. Bauman*, 571 U.S. 117 (2014). *See Aybar v. Aybar ("Aybar")*, 93 N.Y.S.3d 159, 165 (2d Dep't 2019); *Best v. Guthrie Med. Grp., P.C.*, 107 N.Y.S.3d 258, 261-62 (4th Dep't 2019); *Fekah v. Baker Hughes Inc.*, 110 N.Y.S.3d 1, 2 (1st Dep't 2019); *see also Aybar v. Goodyear Tire & Rubber Co.*, 106 N.Y.S.3d 361, 361 (2d Dep't 2019); *Qudsi v. Larios*, 103 N.Y.S.3d 492, 494-95 (2d Dep't 2019). We further reject plaintiffs' arguments that Dunkin Donuts' contacts with New York were sufficient to subject it to general personal jurisdiction in the state, and we agree with the district court that Chen failed to allege a plausible violation of GBL §§ 349 and 350. Accordingly, the district court's judgment dismissing the SAC is **AFFIRMED**.

---

[1]    Plaintiffs do not appeal the dismissal of Chen's Magnuson-Moss Act claim.

## BACKGROUND

The facts alleged in the SAC are assumed to be true. Dunkin Donuts is one of the largest retail chains in the United States, with more than 11,500 franchises worldwide. The company is incorporated in the state of Delaware and headquartered in Massachusetts, although it has franchises in additional states, including New York.

Sometime between 2013 and 2017, each of the plaintiffs purchased one or more of the Products after "repeated[] expos[ure]" to Dunkin Donuts' representations about the Products in television advertisements. J. App'x at 114-16. Evanson, Johnson, Bucholtz, and Beattie purchased the Products from franchises in Massachusetts, Florida, Michigan, and California respectively, while Chen purchased hers from a franchise in Flushing, New York. Plaintiffs also paid a premium for the Products -- the Angus Sandwich cost between $.45 and $.50 more than the comparable Classic Egg and Cheese Sandwich with ham, bacon, or sausage, and the Angus Wrap cost $.60 more than the comparable Classic Egg and Cheese Wrap with ham, bacon, or sausage.

Plaintiffs later learned that although the Products were labeled as "steak," neither contained an "intact" piece of meat. J. App'x at 100. Instead, the

6

Products contained ground beef patties with multiple additives. Plaintiffs filed suit, alleging that labeling these products as "Angus steak" and describing them as "steak" in television advertisements was deceptive and misleading to the reasonable consumer.

The SAC identified three television advertisements, providing links to videos, that allegedly deceived plaintiffs into buying the Products. All three advertisements featured actors holding the Products and describing them using the words "Angus" and "steak." Each advertisement also concluded with a photograph of each of the Products, showing a beef patty. The SAC, a proposed class action lawsuit, alleged that these representations were deceptive, in violation of the Magnuson-Moss Act and various state consumer protection laws, including GBL §§ 349 and 350.

On February 8, 2018, Dunkin Donuts moved to dismiss the SAC for lack of personal jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6). In a Memorandum and Order issued September 17, 2018, the district court granted the motion and dismissed the SAC.

This appeal followed.

## DISCUSSION

### I. *General Personal Jurisdiction*

Plaintiffs argue principally that the district court erred in dismissing the SAC as to the out-of-state plaintiffs' claims because Dunkin Donuts consented to general personal jurisdiction in New York by registering to do business and designating an agent for service of process in the state. In the alternative, plaintiffs argue that Dunkin Donuts' contacts with New York are sufficient to subject it to general personal jurisdiction.

#### A. *Standard of Review*

"We review a district court's dismissal of an action for want of personal jurisdiction de novo, construing all pleadings and affidavits in the light most favorable to the plaintiff." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018). "[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Id.*

Where a district court's jurisdictional finding is premised on an application of state law, we similarly review the district court's interpretation of state law de novo. *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). When deciding a question of state law, "we . . . look to the state's decisional law, as well

8

as to its constitution and statutes." *Id.* "Where state law is unsettled, we are obligated to carefully . . . predict how the state's highest court would resolve the uncertainty or ambiguity." *Id.* (internal quotation marks omitted). Absent a clear directive from a state's highest court, "federal authorities must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) (internal quotation marks omitted).[2]

## B.     *Consent to General Personal Jurisdiction under BCL § 1301(a)*

"In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, we look to the law of the forum state to determine whether a federal district court has personal jurisdiction over a foreign corporation." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016); *see also* Fed. R. Civ. P. 4(k)(1). General personal jurisdiction in New York is governed by Civil Practice Law and Rules, Section 301, which allows a court to exercise "such jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. § 301. New York

---

[2]     Although this Court also has the option of certifying the question to the New York Court of Appeals, certification is not warranted here because "sufficient precedents exist for us to make [the] determination." *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005).

law also requires foreign corporations to register with the state and designate an agent for service of process before conducting business in the state. *See* N.Y. Bus. Corp. Law § 1301(a). Prior to 2014, New York courts interpreted the act of registering under BCL § 1301(a) as consent to general jurisdiction in the state. *See Aybar*, 93 N.Y.S.3d at 169 (collecting cases).

In 2014, however, the Supreme Court decided *Daimler* and further defined the circumstances under which a state may exert general personal jurisdiction over a foreign corporation. 571 U.S. at 126. The Supreme Court clarified that a state's exercise of general personal jurisdiction over a foreign corporation will not comport with the Fourteenth Amendment's Due Process Clause unless "that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum." *Id.* (internal quotation marks and alterations omitted). We have since explained "our view" that "*Daimler* established that, except in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business." *Brown*, 814 F.3d at 627 (internal quotation marks omitted).

10

This Court has not considered the impact of *Daimler* on New York courts' longstanding interpretation of BCL § 1301(a). We have, however, considered general personal jurisdiction in the context of Connecticut's business registration statute. *See Brown*, 814 F.3d at 624-26. In *Brown*, the plaintiff argued, *inter alia*, that the defendant consented to general personal jurisdiction in Connecticut when it registered to do business and appointed an agent for service of process in the state. *Id.* at 630. In affirming the lower court's dismissal for lack of personal jurisdiction, we expressed reservations as to whether such use of a state's "coercive power" could survive constitutional scrutiny in light of *Daimler* and its progeny. *Id.* at 639, 641. Because we determined, however, that Connecticut's business registration statute did not actually impose such a requirement, we did not reach the issue. *Id.* at 641.

Unlike the statute in *Brown*, New York's business registration statute has historically been interpreted as *conditioning* registration under BCL § 1301(a) on consent to general jurisdiction in the state. Indeed, our opinion in *Brown* expressly identified New York's business registration statute as one that has been "definitively construed" in such a way, noting that although the statute itself did not explicitly impose such a requirement, "legislation has been introduced to

11

ratify that construction of the statute." *Id.* at 640; *see also* 2015 N.Y. Senate-Assembly Bill S4846, A6714. The legislation referenced in *Brown*, however, never passed, and the "definitive[ness]" of New York law interpreting registration under BCL § 1301(a) as consenting to general jurisdiction in New York is no longer settled. *Compare Aybar*, 93 N.Y.S.3d at 170 (holding that the consent-by-registration New York cases do not survive *Daimler*) *with Bailen v. Air & Liquid Sys. Corp.*, 2014 WL 3885949, at *4-5 (N.Y. Sup. Ct., N.Y. Cty., Aug. 5, 2014) (holding that even after *Daimler*, foreign corporations registered to do business in New York are subject to general jurisdiction by consent).

New York's highest court has yet to definitively weigh in on whether the state's longstanding interpretation of BCL § 1301(a) survives *Daimler*. The three intermediate appellate courts to have considered the issue, however, have concluded that it does not. *See Aybar*, 93 N.Y.S.3d at 170; *Best*, 107 N.Y.S.3d at 260; *Fekah*, 110 N.Y.S.3d at 2; *see also Aybar v. Goodyear*, 106 N.Y.S.3d at 361; *Qudsi*, 103 N.Y.S.3d at 494. In *Aybar*, after giving great consideration to "the evolution of in personam jurisdiction jurisprudence, and, particularly the way in which *Daimler* has altered that jurisprudential landscape," 93 N.Y.S.3d at 166, the Second Department held that "a corporate defendant's registration to do

12

business in New York . . . does not constitute consent by the corporation to submit to the general jurisdiction of New York for causes of action that are unrelated to the corporation's affiliations with New York," *id.* at 170. The First and Fourth Departments have since cited favorably to *Aybar* in adopting that holding. *See Best*, 107 N.Y.S.3d at 260; *Fekah*, 110 N.Y.S.3d at 2.

Admittedly, lower New York courts are not unanimous on this interpretation since *Daimler*.[3] But absent specific direction from the highest New York court, we remain "obligated to carefully . . . predict how the state's highest court would resolve the uncertainty or ambiguity." *In re Thelen LLP*, 736 F.3d at 219 (internal quotation marks omitted); *see also V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) ("This Court is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion."). We note that nothing in the statutory text of BCL § 1301(a) expressly conditions registration on consent to general jurisdiction in the state, and that the constitutional concerns we expressed in *Brown* -- including that such a regime "could justify the exercise of

---

[3] *See, e.g., Wheeler v. CBL & Assocs. Props., Inc.*, 2017 WL 3611295, at *2-3 (N.Y. Sup. Ct., N.Y. Cty., Aug. 17, 2017); *Corp. Jet Support, Inc. v. Lobosco Ins. Grp.*, 2015 WL 5883026, at *1-2 (N.Y. Sup. Ct., N.Y. Cty., Oct. 7, 2015); *Bailen*, 2014 WL 3885949, at *4-5.

general jurisdiction over a corporation in a state in which the corporation had done *no business at all*," 814 F.3d at 640, and that "every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief," *id.* -- are also present here.

Accordingly, in light of *Daimler*, our own precedent, and the unanimous conclusion of the three New York intermediate courts to have considered the issue, we now hold that a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in the state and designating an in-state agent for service of process under BCL § 1301(a). We have little trouble concluding that were the New York Court of Appeals to decide the issue, it would agree that this conclusion is consistent with the U.S. Constitution and the evolving law surrounding general personal jurisdiction. We thus affirm the lower court's holding that Dunkin Donuts did not consent to general personal jurisdiction in New York.

C.    *General Personal Jurisdiction Absent Consent*

Plaintiffs argue, in the alternative, that even if Dunkin Donuts did not consent to general jurisdiction, the district court nonetheless had jurisdiction

14

over it because of its contacts with New York. This argument fails because it is both waived by plaintiffs' failure to raise it with the district court below, *see In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008), and because plaintiffs have not alleged facts sufficient to demonstrate that Dunkin Donuts' contacts in New York suffice to render it "at home" in the jurisdiction. *Daimler*, 571 U.S. at 122. Dunkin Donuts is not incorporated or headquartered in New York. Plaintiffs contend that Dunkin Donuts "is a franchisor with numerous retail establishments in New York," and "that it governs . . . and controls nationwide product labeling and advertising," Appellants' Br. at 6, but they made no showing that the company's relationship with New York was in any way significant or exceptional in relation to the company's nationwide business activity, *see Brown*, 814 F.3d at 627 (finding no general personal jurisdiction where defendant's contacts, "while not insubstantial, constitute[d] only a very small part of its portfolio"); *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (bank not subject to general personal jurisdiction where it has branch offices in the forum but is headquartered and incorporated elsewhere). Accordingly, plaintiffs failed to allege facts upon which the exercise of general jurisdiction would be appropriate.

The district court correctly dismissed the out-of-state plaintiffs' claims for lack of personal jurisdiction.

## II.     *The Reasonable Consumer under GBL §§ 349 and 350*

We turn now to the merits of the remaining plaintiff's claims.  We review a district court's grant of a motion to dismiss under Rule 12(b)(6) de novo. *Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Section 349 of the GBL provides a cause of action for any person injured by "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or any service."  N.Y. Gen. Bus. Law § 349(a), (h). "Deceptive acts" are acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).  "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has

been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)).

Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce," and is analyzed under the same "reasonable consumer" standard as Section 349. *Id.* at 521. Under either provision, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741.

The SAC identified three Dunkin Donuts television advertisements, providing descriptions along with video links, and alleged that the advertisements were deceptive in their use of the word "steak." All three advertisements, however, conclude with multiple zoomed-in images that clearly depict the "steak" in the Products as a beef patty. *See, e.g.*, Addendum hereto. Because "there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed," *Broder v. MBNA Corp.*, 722 N.Y.S.2d 524, 526 (1st Dep't 2001), the district court properly concluded that these advertisements were

not actionable under either GBL provision as a matter of law.[4]  Moreover, while the word "steak" can refer to "a slice of meat," it is also defined as "ground beef prepared for cooking or for serving in the manner of a steak."  Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/steak (last visited March 23, 2020).  Classic examples of ground beef served as "steak" include chopped steak, hamburger steak, and Salisbury steak.

The district court also did not err in basing dismissal, in part, on the undisputed fact that the Products do in fact contain "Angus beef."  While it is true that literally accurate statements can still be misleading, this Court has repeatedly observed that "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."  *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019).  Here, Chen bought her Angus Sandwich for less than $4 and her Angus Wrap for less than $2.  As the television advertisements themselves demonstrate, the Products are marketed as grab-and-go products that can be consumed in hand, without the need for a fork and knife.

---

[4]    *See Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 775 N.Y.S.2d 59, 61 (2d Dep't 2004) ("[B]ecause the conduct complained of is specifically provided for by the parties' lease and thus was fully disclosed, such conduct is not a deceptive business practice."); *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002) ("The standard for recovery under [GBL] § 350, while specific to false advertising, is otherwise identical to section 349.").

A reasonable consumer purchasing one of the Products from Dunkin Donuts in that context would not be misled into thinking she was purchasing an "unadulterated piece of meat." Appellants' Br. at 31.

The district court properly dismissed Chen's claims under GBL §§ 349 and 350.

## CONCLUSION

For the reasons set forth above, the district court's judgment of dismissal is **AFFIRMED**.



Price and participation may vary. Limited time offer.

"Fellow-Steak-Lover Handshake" Commercial at 00:16.  J. App'x at 110 n.1.