24-840-cv
*Raad v. Bank Audi S.A.L.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of April, two thousand twenty-five.

PRESENT:
> PIERRE N. LEVAL,
> JOSEPH F. BIANCO,
> WILLIAM J. NARDINI,
> > *Circuit Judges*.

---

PATRICIA RAAD, STEPHANIE RAAD,
DAVID RAAD,

> *Plaintiffs-Appellants*,

v.                                                             24-840-cv

BANK AUDI S.A.L.,

> *Defendant-Appellee*.

---

FOR PLAINTIFFS-APPELLANTS:          DOUGLAS A. KELLNER (Louise Grégoire, *on the brief*), Kellner Herlihy Getty & Friedman LLP, New York, New York.

1

FOR DEFENDANT-APPELLEE: SAMANTHA L. CHAIFETZ (Cooper C. Millhouse, DLA Piper LLP (US), Washington, District of Columbia, and Neal F. Kronley, DLA Piper LLP (US), New York, New York, *on the brief*), DLA Piper LLP (US), Washington, District of Columbia.

Appeal from a judgment of the United States District Court for the Southern District of New York (Mary Kay Vyskocil, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on March 6, 2024, is **AFFIRMED**.

Plaintiffs-Appellants Patricia Raad, Stephanie Raad, and David Raad (collectively, the "Raads") appeal from the district court's judgment dismissing their claims against Defendant-Appellee Bank Audi S.A.L. ("Bank Audi"), a Lebanese bank. The Raads sued Bank Audi for refusing to transfer more than $17 million from their Bank Audi accounts in Lebanon to their U.S. accounts through Bank Audi's New York correspondent banks, contending that, under Lebanese law, Bank Audi breached certain contracts it entered into with the Raads—namely, Bank Audi's account-opening agreements, as well as external transfer forms the Raads and Bank Audi purportedly completed together in Lebanon in 2019 (the "Transfer Orders"). As relevant to this appeal, the district court dismissed the Raads' claims for lack of specific personal jurisdiction under New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1).[1] *See generally Raad v. Bank Audi S.A.L.*, No. 20-cv-11101 (MKV), 2024 WL 967172 (S.D.N.Y. Mar. 5, 2024). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

---

[1] The district court also rejected the Raads' theory of quasi in rem jurisdiction. The Raads do not challenge that determination here. Accordingly, any challenge is abandoned. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 294 (2d Cir. 2008).

"We review a district court's dismissal of an action for want of personal jurisdiction de novo, construing all pleadings and affidavits in the light most favorable to the plaintiff." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 497 (2d Cir. 2020) (internal quotation marks and citation omitted). To survive a motion to dismiss for lack of personal jurisdiction at the pleadings stage, the plaintiff has the burden of making "a *prima facie* showing that jurisdiction exists." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (internal quotation marks and citation omitted).

New York's long-arm statute gives New York courts personal jurisdiction over a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state," "[a]s to a cause of action arising from" such a transaction. N.Y. C.P.L.R. § 302(a)(1). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). The second prong of this test "require[s] that, in light of all the circumstances, there must be an articulable nexus or substantial relationship between the business transaction and the claim asserted." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012) (internal quotation marks and citations omitted).

The Raads seek to establish personal jurisdiction based on Bank Audi's prior and likely future use of its New York correspondent bank accounts to transfer U.S. dollars from the Raads' accounts in Lebanon to their accounts in New York, even though their breach of contract claim does not arise from any transaction that occurred within the state. Our precedents squarely foreclose that theory of personal jurisdiction. In *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120 (2d Cir. 2022), we explained that "[a] claim may arise from the use of a correspondent bank account for

3

purposes of [New York's long-arm statute] where an alleged actual transaction made through such an account formed part of the alleged unlawful course of conduct underlying the cause of action set out in the complaint." *Id.* at 130. We concluded that the court lacked personal jurisdiction because the plaintiff "d[id] not include a single allegation that any defendant used an actual, specific transaction through a New York correspondent account in the course of bringing about the injuries on which the claims are predicated—namely, that the [plaintiffs'] USD remained in Lebanon." *Id.* at 132. We came to the same conclusion in two recent summary orders. *See Kreit v. Byblos Bank S.A.L.*, No. 23-7840-cv, 2025 WL 338194, at *1 (2d Cir. Jan. 30, 2025) (summary order); *Moussaoui v. Bank of Beirut & The Arab Countries*, No. 23-7332-cv, 2024 WL 4615732, at *2 (2d Cir. Oct. 30, 2024) (summary order). Here, just as in *Daou*, *Kreit*, and *Moussaoui*, the operative complaint fails to allege that any transaction with Bank Audi's New York correspondent bank accounts brought about the alleged injury. That is unsurprising given that the alleged injury—a Lebanese bank's failure to transfer funds from Lebanon to the United States— necessarily stems from the *absence* of such a transaction.

Although the Raads raise several arguments in an attempt to find a material distinction between their case and the factual circumstances in *Daou*, we find each argument unpersuasive. First, the Raads contend that they differ from the plaintiffs in *Daou* because the Raads are residents of New York and have bank accounts in New York. That contention, even if factually correct, misses the mark. The Raads' own connections to New York do not, *ipso facto*, establish that Bank Audi engaged in a specific transaction in New York that sufficiently relates to the harm the Raads complain of here. *Cf. Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) ("The relationship between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum." (emphasis in original) (internal quotation marks and

4

citation omitted)).  In short, the Raads' New York ties do nothing to cure their inability to identify a particular New York business transaction Bank Audi engaged in that has an articulable nexus to their breach of contract claim.

Next, the Raads contend that this case differs from *Daou* in that Bank Audi, by entering into the Transfer Orders, was "contractually obliged" to the Raads to transfer the money to New York, Appellants' Br. at 35 (emphasis omitted), and, by failing to execute on the Transfer Orders, Bank Audi was "effectively canceling the agreed orders and reneging on their promises to transfer and deliver the funds to New York," Reply Br. at 2.  However, we rejected a substantially similar argument in *Daou*, explaining that "[e]ven accepting as true that the Commercial Banks expressly represented in late 2019 that they would wire the [plaintiffs] their USD through the New York correspondent bank accounts, that is conduct that occurred in Lebanon, in connection with, at most, fictitious future transactions of business in New York that the Commercial Banks did not actually make or, per the allegations in the [operative complaint], intend to make."  42 F.4th at 132 (alterations adopted) (internal quotation marks and citation omitted).  We discern no meaningful distinction between the express representation in *Daou* and the purported contractual obligation here for purposes of the personal jurisdiction inquiry.  At bottom, the New York transaction, however ardently promised, did not occur.

To the extent the Raads argue that the relevant "transaction" for the jurisdictional analysis is the entry into the Transfer Orders, that argument has little merit.  Even assuming *arguendo* that entering into the Transfer Orders constitutes a "transact[ion]" under Section 302(a)(1), that transaction simply did not happen "within the state" of New York.  N.Y. C.P.L.R. § 302(a)(1).  As Patricia Raad's own declaration makes clear, *all* of the material events related to the Transfer Orders occurred solely in Lebanon.  In January 2019, Patricia Raad visited a Bank Audi branch in

Lebanon, where the bank manager filled out portions of the Transfer Orders and provided copies of those incomplete Transfer Orders to Patricia. In October 2019, Patricia, along with her son, David, again visited a Bank Audi branch in Lebanon, where the Raads completed and signed the Transfer Orders. In November 2019, Patricia and David visited Bank Audi in Lebanon yet again, where a bank employee orally promised to perform the transfers. Patricia further declared that, even "[i]n the middle of the Covid pandemic in summer 2020," she "took a flight back to Lebanon to follow up on the transfer" with Bank Audi. Joint App'x at 313. In short, at no point did this alleged "transaction" regarding the Transfer Orders ever cross into New York.

Given these factual circumstances, the Raads' heavy reliance on *American Girl v. Zembrka*, 118 F.4th 271 (2d Cir. 2024), is entirely misplaced. In *American Girl*, we held that a foreign company being sued for trademark counterfeiting and infringement "purposefully availed itself of the privilege of conducting activities within New York and, thus, transacted business" there because it "accepted orders with New York shipping addresses, sent confirmatory emails with New York shipping addresses containing commitments to ship to those New York addresses, and accepted payments from a customer with a New York address." *Id.* at 277. We also noted that the company's website was "highly interactive" because "a prospective customer in New York could submit an order and payment information through [the company's] websites that, in turn, triggered an order confirmation email from Defendants and payment receipts from PayPal." *Id.* at 278 (internal quotation marks and citation omitted); *see also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007) ("[A] website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1) . . . insofar as it helps to decide whether the defendant transacts any business in New York." (internal quotation marks and citation omitted)). By contrast, as

6

explained *supra*, the material conduct related to the Transfer Orders occurred exclusively in person and in Lebanon.

Finally, the Raads argue that, by allegedly agreeing to transfer money from Lebanon to New York, Bank Audi contracted to supply services in New York. *See* N.Y. C.P.L.R. § 302(a)(1). We disagree. Contrary to the Raads' contention, the services Bank Audi contracted to provide in connection with a hypothetical overseas transfer of funds located in Lebanon do not occur "in" New York. Indeed, at least one New York appellate court has held that an "agreement [] to pay a promissory note in New York does not fall into the category of 'contracts anywhere to supply goods or services in the state.'" *Am. Recreation Grp., Inc. v. Woznicki*, 448 N.Y.S.2d 51, 52 (2d Dept. 1982) (quoting N.Y. C.P.L.R. § 302(a)(1)). The court reasoned that, "[t]o read the statute otherwise would result in enabling any New York company to assert jurisdiction over all those who may do business with any of its branch offices throughout the country by merely designating its New York office as the address to which payment should be made." *Id.* Similarly, to adopt the Raads' reading of the statute would, in essence, allow *any* customer of a foreign bank to haul that bank into New York court by merely requesting or directing that the bank transfer funds to New York. The Raads neither persuasively argue, nor point to any case authority suggesting, that New York's long-arm statute should sweep so broadly.

In sum, we agree with the district court that it lacked personal jurisdiction over Bank Audi.[2]

---

[2] Because we conclude that the district court properly dismissed the complaint for lack of personal jurisdiction, we need not, and do not, address Bank Audi's alternative argument that dismissal was also warranted under the doctrine of *forum non conveniens*.

7

&ast;    &ast;    &ast;

We have considered the Raads' remaining arguments and find them to be without merit.

Accordingly, the judgment of the district court is **AFFIRMED**.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court