*Boateng v. BMW*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of November, two thousand twenty-five.

Present:

> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> STEVEN J. MENASHI,
> *Circuit Judges*.

_____

GODWIN BOATENG,

    *Plaintiff-Appellee,*

    v.                                                                          24-2976-cv

BMW OF NORTH AMERICA, LLC, BMW MANUFACTURING CO., LLC, BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, A GERMAN CORPORATION,

    *Defendants-Appellants,*

BMW OF NORTH AMERICA, INC., BMW (US) HOLDING CORPORATION, BMW GROUP, KIEKERT AG,

    *Defendants.*

_____

For Plaintiff-Appellee:            AVINOAM COHEN, A. Cohen Law Firm, P.C., Valley
                                   Stream, N.Y.

For Defendants-Appellants:         JOSEPH KIM (Philip Semprevivo, *on the brief*),
                                   Biedermann Hoenig Semprevivo P.C., New York,
                                   N.Y.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendants-Appellants BMW of North America, LLC, BMW Manufacturing Co., LLC, and Bayerische Motoren Werke Aktiengesellschaft, a German Corporation (collectively, "BMW") appeal from a judgment entered on June 26, 2024, in the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *District Judge*) following a jury trial, and the district court's subsequent opinion denying their post-trial motions. Godwin Boateng brought this action against BMW as a result of the accidental amputation of a portion of his thumb following the activation of his 2013 BMW X5's "soft close" feature. "Soft close" is a feature in some BMW cars that automatically closes a car door when the door is approximately six millimeters from being closed, designed to obviate the need to slam car doors shut.

The accident giving rise to this case occurred after Boateng parked his car on a narrow residential street but before he had fully closed its door. While he was standing on the driver's side of the car, he held the driver's door behind him, with his back to the door. Most of his fingers were resting on the handle, and his right thumb tucked around the edge of the door in the door column. He saw a truck approaching from his left, and stepped back towards his car to avoid

2

making contact with the truck, which passed within a few feet of him. As Boateng backed up, the driver's door swung towards the closed position and its soft close feature activated, amputating a portion of his thumb.

Boateng asserted design-defect and failure-to-warn products liability claims and claims for breach of implied warranty related to the soft close door, as well as a claim for misleading business practices in violation of New York General Business Law (GBL) § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." Boateng also brought claims for manufacturing defect products liability, breach of express warranty, negligent misrepresentation, fraudulent concealment, violations of 15 U.S.C. § 1232(g), and negligent infliction of emotional distress, but the district court granted summary judgment for BMW before trial on these counts. *Boateng v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-CV-00209, 2022 WL 4357555 (E.D.N.Y. Sept. 20, 2022).

At the close of the one-week jury trial, BMW moved for a directed verdict on all claims pursuant to Federal Rule of Civil Procedure 50(a). The district court reserved its decision, and the jury returned a verdict finding BMW liable on the GBL § 349 claim only. The jury awarded Boateng $255,360 for past loss of earnings, $800,000 for past pain and suffering, and $850,000 for future pain and suffering. BMW filed post-trial motions (1) renewing its application for a directed verdict on the GBL § 349 claim under Rule 50(b), (2) requesting a new trial on the GBL § 349 claim pursuant to Rule 59, (3) moving for remittitur or a new damages trial pursuant to Rule 59 on the ground that the awards were excessive. The district court denied BMW's motions, and this appeal followed. We assume the parties' familiarity with the case.

3

## I. Rule 50 Motion[1]

"We review a district court's denial of a motion for judgment as a matter of law *de novo*," applying the same legal standards required of the district court. *Ortiz v. Stambach*, 137 F.4th 48, 60 (2d Cir. 2025). [2] A court may grant a motion for judgment as a matter of law in a jury trial only if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party opposing the request." *Id.* We may not "weigh credibility or otherwise consider the weight of the evidence" and instead must "defer to the credibility assessments that may have been made by the jury and the reasonable factual inferences that may have been drawn by the jury." *Id.* at 61. Thus, a court cannot grant judgment as a matter of law unless "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." *Id.*

In order to succeed on a GBL § 349 claim, a plaintiff must prove by a preponderance of the evidence that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020). Whether an act or omission is deceptive is a question of fact, assessed from the perspective of a reasonable consumer. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000). Where, as here, the allegedly deceptive act involves an omission, the plaintiff must show that "the business alone possesses material information that is

---

[1] Because a Rule 50(b) motion is in reality a renewal of the Rule 50(a) motion, the motions are considered together.

[2] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

relevant to the consumer and fails to provide this information," or that the plaintiff could not "reasonably have obtained the relevant information [he] now claim[s] the [defendant] failed to provide." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26-27 (N.Y. 1995).

BMW does not dispute that its conduct is consumer facing. Instead, it argues that no reasonable jury could find that there was a deceptive omission because (1) it is a matter of common sense that fingers and body parts should not be put in the path of closing doors, (2) warnings in the car's owner's manual adequately warned of the risk of amputation-like injuries, (3) and even though BMW had received numerous customer reports of injuries from soft close doors, there was no omission of material information because soft close doors are supposedly statistically no more dangerous than normal doors and the number of customer complaints was relatively small. BMW also argues that any omission did not cause Boateng's injuries because Boateng's step backwards was a but-for cause of his injury.

Each of these arguments fails. Evidence at trial revealed that soft close doors are designed to exert substantially more force (134.885 to 224.809 pounds) than the amount of force required to fracture a thumb (95 to 100 pounds), and that the doors would stop for certain obstructions— like a steel bar—but not a finger. This evidence was a sufficient basis for the jury to conclude that common sense and general awareness of soft close doors (which Boateng admitted he had) do not mean that a reasonable consumer would know that there was a risk of amputation upon (accidental) activation of the soft close doors. Similarly, the jury could have reasonably found (in the face of conflicting expert evidence on the issue) that the soft-close-related warning in the owner's manual, which warned of a "danger of pinching," was not sufficient to put a reasonable consumer on notice of the risk of amputation, even if read in conjunction with other, general

warnings about the importance of following safety tips. *See Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997) (summarizing New York law dictating that the "adequacy" of a warning in product liability cases is "generally a question of fact to be determined at trial").

BMW's attempts to argue that it did not possess—and thus did not omit—material information similarly fall short. It is undisputed that in response to an inquiry into soft close doors, BMW told a German regulator (coincidentally, on the day of Boateng's injury) that it was aware of 44 incidents of injuries to fingers that had occurred between 2001 and 2016 that resulted from the activation of the soft close mechanism. Further demonstrating its awareness of the risk, BMW subsequently told the regulator that soft close-related injuries are usually tissue damage or nail fractures.[3] BMW's insistence that there was nevertheless no material omission because injuries from closing car doors are common is unavailing. As the district court cogently explained, the problem is that soft close doors pose an "*additional risk* of injury above and beyond that posed by a standard car door, and [] the jury could find the failure to disclose that additional risk to be materially misleading." Special App'x 76.

BMW's causation-related arguments fail too. Justifiable reliance is not necessary for proof of causation under GBL § 349. *Oswego*, 85 N.Y. 2d at 26. All Boateng needed to prove was that BMW's deceptive conduct caused his injury. *See Stutman*, 95 N.Y.2d at 29. The jury heard evidence that Boateng was not specifically made aware of the soft close feature in the process of purchasing his car and that, even when he became aware of the feature through observation, he

---

[3] BMW correctly notes that the mere receipt of complaints regarding a product does not give rise to the inference that a defendant failed to disclose material information in violation of GBL § 349. *See Bozick v. Conagra Foods, Inc.*, No. 19-CV-4045, 2022 WL 4561779, at *37 (S.D.N.Y. Sept. 28, 2022). However, courts have held that customer complaints when combined with other facts can be a basis for the inference that an omission was material. *See Woods v. Maytag Co.*, 807 F.Supp.2d 112, 126–29 (E.D.N.Y. 2011). Here, the jury could reasonably find that BMW's receipt of customer complaints combined with its correspondence with the Germany regulatory authority, including a letter reporting an incident eerily similar to Boateng's, was sufficient evidence of a material omission.

"never realized" the feature "could be that dangerous." Special App'x 86. The jury could have reasonably found that Boateng would not have purchased the "premium package" that included the soft close doors or would have taken additional care to avoid the specific dangers posed by such doors had he been aware of the risk of serious injury they presented. The jury thus could have reasonably concluded that BMW's deceptive omission of those risks was a substantial factor in causing Boateng's injuries. BMW's contention that the injury would not have occurred absent Boateng's self-preserving act to avoid an oncoming truck does not detract from the reasonableness of the jury's conclusion.[4]

## II. Rule 59 Motions

We review a district court's denial of a motion for a new trial for abuse of discretion. *Ortiz*, 137 F.4th at 71. The standard for granting a new trial under Rule 59 is less stringent than Rule 50's standards, *see Manley v. AmBase Corp.*, 337 F.3d 237, 244 (2d Cir. 2003), but still requires that the trial court be convinced that "the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998).

### A. Weight of the Evidence

BMW argues that the jury verdict is against the weight of the evidence "for all the same reasons" it is entitled to judgment as a matter of law. Appellants' Br. 39. But "the *denial* of a motion for a new trial made on the ground that the verdict was against the weight of the evidence is not reviewable on appeal." *Ferreira v. City of Binghamton*, 975 F.3d 255, 265 (2d Cir. 2020). We thus decline to consider this argument.

---

[4] And, as the district court noted, the jury did not apportion any comparative fault to Boateng, shoring up the inference that the jury was convinced that the soft close door, not any negligence by Boateng, caused his injury.

7

**B. Conduct by Plaintiff's Counsel**

During discovery, BMW provided Boateng with two different accountings of the number of soft-close-related accidents it was aware of, corresponding to two different sample sizes. The parties also stipulated to a third accounting of soft-close-related accidents that could be used to show BMW's notice. At trial, Boateng's counsel aggressively questioned BMW's witnesses about the discrepancies among those numbers, and he called attention to the discrepancies during summation. The district court sustained BMW's objections and offered appropriate limiting instructions when Boateng's counsel insinuated that the differing accountings meant that BMW was lying about the number of consumer injuries it was aware of.

BMW argues that the Boateng's counsel's conduct "succeeded in swaying and confusing the jury by causing them to think that some kind of deception had occurred" and that this purported deception (as opposed to a consumer-facing statement or omission) was *actually* the basis for the jury's verdict on GBL liability, as "confirmed by" the jury's "finding of non-liability against BMW on the failure to warn claim." Appellants' Br. 43–44. Thus, BMW's argument appears to amount to a motion for a new trial on the basis of attorney misconduct. In evaluating whether an attorney's misconduct warrants a new trial, the analysis focuses on whether the misconduct is *"de minimis* in the context of the entire trial" or instead "causes prejudice to the opposing party and unfairly influences [the] jury's verdict." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992). We afford "broad discretion" to the decision of the trial judge, *Matthews v. CTI Container Transport Int'l Inc*, 871 F.2d 270, 278 (2d Cir. 1989), and consider any sustained objections and curative instructions, *Pappas*, 963 F.2d at 540.

The district court did not abuse its discretion when it concluded that any alleged misconduct by Boateng's counsel did not warrant a new trial. The district court rightly concluded

that Boateng was entitled to probe the basis for BMW's differing "responses to very similar questions" and "to consider the inconsistencies in determining credibility and weight," which BMW does not appear to contest. Special App'x 104, 109. And BMW's argument that the jury was somehow convinced that the discrepancy between the numbers formed the requisite "deceptive act" for GBL § 349 liability is mere speculation that is unsupported by the record. Moreover, any risk of such confusion was mitigated by the district court's curative instructions.

### C. Lost Wages Award

Under New York law, "loss of earnings must be established with reasonable certainty, focusing, in part, on the plaintiff's earning capacity both before and after the accident." *Clanton v. Agoglitta*, 615 N.Y.S.2d 68, 69 (2d Dep't 1994); *see also Carroll v. United States*, 295 F. App'x 382, 385 (2d Cir. 2008) (summary order). "[U]nder New York law[,] the plaintiff's uncorroborated testimony as to the amount of lost past or future wages cannot, as a matter of law, satisfy the 'reasonable certainty' standard. A plaintiff must submit relevant documentation, such as tax returns or W–2 forms." *Mugavero v. Arms Acres, Inc.*, 680 F.Supp.2d 544, 581 (S.D.N.Y. 2010).

The jury awarded $255,360 in lost wages for Boateng based on (1) an hourly rate of $114, which is what Boateng was earning at the time of the accident, (2) a 40-hour workweek, and (3) a 56-week period of lost work. This methodology was based on Boateng's calculation during his testimony, and the inputs were supported by documentary evidence: the relevant contract was entered into evidence, and it showed that Boateng was being paid $114 per hour for 40 hours of work per week at the time of the accident. Boateng also entered his 2016 pay stubs into evidence along with his 2015, 2016, and 2017 tax records, reflecting $228,594 in gross receipts in 2015, $132,880 in 2016, and $82,500 for 2017. Boateng indisputably did not work for the remainder of

9

2016 following his accident on July 6, and he testified that he did not return to work full-time until late August 2017, although he appears to have worked briefly in May and June 2017 before a second surgery on his thumb on June 29.

BMW argues that this award is nevertheless "clearly belied" by the trial record. Appellants' Br. 46. But BMW's arguments rely on speculation in *its* favor and therefore fail to undermine the reasonableness of the lost wages award. For example, BMW argues that "there was no guarantee" that Boateng would have continued to earn $114 per hour after his operative contract expired at the end of 2016 because "as an independent contractor" Boateng must negotiate new rates with different employers; BMW also notes that the new contract Boateng signed in May 2017 had a starting rate of $110. *Id.* at 48–49. But, as the district court explained, BMW ignores that the operative contract provided that Boateng would be paid for any work completed after the date of expiry at his then-existing rate, as well as testimony by Boateng in which he explained that he "hardly" experiences gaps in employment because the ultimate client—the Department of Defense—remains the same.[5] Special App'x 114. As to the $110 rate in the May 2017 contract, the district court held that "the jury reasonably could have inferred that Mr. Boateng would have been in a stronger negotiating position without any break in his work on the contracting project," a conclusion that BMW fails to address on appeal. *Id.* at 116. This argument, like BMW's other arguments, does not lead us to conclude that the district court abused its discretion in concluding that the lost wages award satisfies the reasonable certainty standard.

### D. Pain and Suffering Award

Under New York law, a damages award is excessive "if it deviates materially from what

---

[5] And, as the district court pointed out, a rate of $114 actually underestimates what Boateng would have earned in 2016 because he was entitled to a raise to $117 on September 19, 2016.

would be reasonable compensation," as assessed by looking at awards in similar cases. *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 204 (2d Cir. 2014) (quoting N.Y. C.P.L.R. § 5501(c)); *see Lore v. City of Syracuse*, 670 F.3d 127, 177 (2d Cir. 2012). Thus, whether Boateng's pain and suffering award is excessive depends on awards for pain and suffering in cases involving comparable injuries. *Albanese v. Przybylowicz*, 985 N.Y.S.2d 163, 164 (3d Dep't 2014).

The district court concluded that Boateng's award did not deviate materially from like cases, a conclusion that flowed from its observation that there is a material difference between "sharp" injuries—such as a finger being sliced off by a saw—and "crush" injuries such as Boateng's. "Sharp" injuries to fingers are easier to repair because nerves may be sewn back together. By contrast, Boateng's doctors and Boateng himself explained that reattachment was impossible due to the nature of Boateng's injury; that multiple surgeries were required to alleviate Boateng's nerve pain, which continues to occur intermittently; and that hypersensitivity in his thumb remains constant. Thus, the district court found that Boateng's award falls within the range of awards for crush injuries to fingers in New York. *See, e.g.*, *Class v. Steering Wheel Rentals, Inc.*, JVR No. 378343, 2000 WL 1515708 (N.Y. Kings County Sup. Ct. 2000) (jury award of $1,500,000 for 13-year-old whose finger was amputated when the cargo door of defendant's rental truck slammed shut on his hand); *see also McKeon v. Sears, Roebuck & Co.*, 690 N.Y.S.2d 566, 566 (1st Dep't 1999) (affirming jury award of $810,000 for past pain and suffering and $540,000 for future pain and suffering for sharp injury where four fingers of carpenter's dominant hand were amputated and reattached). BMW points to lesser sums that have been awarded to plaintiffs that have suffered partial amputation, but the cases it cites generally involve "sharp" rather than "crush" injuries, and BMW fails to confront the district court's considered dichotomy between "sharp" and "crush" injuries. We see no basis to conclude that the district court abused its discretion in

11

rejecting BMW's challenge to the jury award.

*     *     *

We have considered Defendants' remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk